# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff**,

        **v.**

AMÉRICO OMS-RIVERA,

    **Defendant.**

**Criminal No.** 16-483 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendant Américo Oms-Rivera ("Dr. Oms")'s motion to exclude opinion testimony pursuant to Federal Rule of Evidence 701 ("Rule 701"). (Docket No. 214.) For the reasons set forth below, Dr. Oms' motion *in limine* is **DENIED**.

## I. Background

This criminal action concerns a scheme to defraud the Social Security Administration ("SSA"), an agency within the Department of Human Health and Human Services. (Docket No. 129.) The SSA administers and oversees the federal Disability Insurance Benefits ("DIB") program. Id. at p. 2; see 42 U.S.C. §§ 1395 *et seq*. The following narrative is based on allegations set forth in the superseding indictment. Id.

Dr. Oms is a psychiatrist. Id. at p. 1. His former secretary Mayte González-Muñoz ("González") and a non-attorney

representative Francisco Cabrera-Alvarado ("Cabrera") allegedly assisted Dr. Oms in submitting fraudulent disability claims to the SSA and private health insurance companies.  Id.[1]  False medical reports prepared by Dr. Oms and González "would claim that an individual was suffering from disabling psychiatric conditions, which prevented him/her from working."  Id. at p. 8.  Dr. Oms and González backdated patient records "to create the appearance of a longer history of medical treatment."  Id. at p. 9.[2]  For instance, Dr. Oms stated that:

> Person A's first medical visit was on October 15, 2013, and that Person A was totally disabled to return to work, when in fact [Dr. Oms] knew that the first medical visit of Person A was on January 14, 2014, and that Person A was able to work.

Id. at p. 13.  Although Person A was in "generally in good health," Dr. Oms nonetheless deemed him or her "totally disabled to work"

---

[1] A non-attorney representative is authorized to: (1) obtain information about [an SSA claimant], (2) submit evidence, and (3) "make statements about facts and law." 20 C.F.R. § 404.1707.  "Medicare Part A provides Medicare enrollees with government-administered health insurance through which the Government makes direct payments to hospitals for healthcare services provided . . . Part C provides enrollees with government-subsidized enrollment in private insurance plans." Allina Health Servs. v. Price, 863 F.3d 937, 938 (D.C. Cir. 2017) (citing 42 U.S.C. §§ 1395(c) et seq. Medical Card System ("MCS"), Triple-S Advantage ("SSS"), Preferred Medicare Choice ("PMC"), Humana and First Medical are private health insurance companies that contracted with Medicare to provide health services to "any person 65 years or older, to certain disabled persons, and to individuals with chronic renal disease." (Docket No. 129 at p. 4.)

[2] To qualify for disability benefits, an applicant must complete a five-month waiting period.  (Docket No. 129 at p. 3) (citing 42 U.S.C. §§ 416(i) and 423(d)).

and prescribed controlled substances, *i.e.* Alprazolam and Oxycodone. Id. at pp. 11—14.

Dr. Oms filed claims for services "including face-to-face office visits . . . which were never in fact performed [because he] was travelling out of the country when the services" were provided. Id. at p. 16. The superseding indictment alleges that Dr. Oms and González referred patients to Cabrera, who would "coach [them] on how to fill out the SSA forms and what to say to get their disability benefits approved." Id. at p. 9. Moreover, Dr. Oms allegedly engaged in "template reporting" by employing "verbiage, phrases or similar concepts used repeatedly . . . to describe distinct individuals or patients." Id. at pp. 8—10.

After law enforcement officers executed search warrants at Dr. Oms' psychiatric offices, he instructed employees to "'fix' the medical records and add fraudulent progress notes with the purpose of creating the appearance that the fictitious medical visits reported to the SSA took place even though this was false." Id. at p. 19. In 2016, Dr. Oms purportedly informed a government cooperator that he knew "people in the underworld and before [Dr. Oms] went to jail he would have someone killed." Id. at p. 19.

On August 2, 2016, a grand jury charged Dr. Oms, González, and Cabrera with, among other offenses, conspiracy to defraud the United States in violation of 18 U.S.C. section 371 ("section

371"). (Docket No. 3.) González and Cabrera pled guilty to the section 371 count. (Docket Nos. 70, 71, 87 and 88.) The sentencing hearings for González and Cabrera are set for January 9, 2020 and January 14, 2020, respectively. (Docket Nos. 183 and 184.)

On April 4, 2018, a grand jury returned a sixteen-count superseding indictment charging Dr. Oms with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (count one), wire fraud in violation of 18 U.S.C. § 1343 (count two), false statement or representation to the Social Security Administration ("SSA") in violation of 42 U.S.C. § 408(a)(3) (count three), dispensing controlled substances by a practitioner in violation of 21 U.S.C. § 841(a)(1) (counts five and six), health care fraud in violation of 18 U.S.C. § 1347 (counts seven through nine, and counts eleven through fifteen), aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (count sixteen), conspiracy to commit an offense in violation of 18 U.S.C. § 371 (count seventeen), and tampering with a witness in violation of 18 U.S.C. § 1512(a)(2)(C) (count eighteen). (Docket No. 129.)[3] Dr. Oms pled not guilty as to all counts in the superseding indictment. (Docket No. 134.) Trial is scheduled to commence on December 16, 2019. (Docket No. 202.)

---

[3] Counts four and ten were intentionally omitted from the superseding indictment. (Docket No. 129.)

The United States seeks to admit lay opinion testimony from the following individuals: (1) Orlando Benítez ("Benítez"), a SSA program specialist, (2) Oscar Figueroa, an SSS manager, (3) Gilberto Alvarado, a Medicare and Mucho Más ("MMM") compliance director, (4) Marta Rodríguez, a First Medical associate director, (5) Mariela Santiago, a Humana fraud and waste investigator, (6) José Maldonado, the MCS claims senior vice president, and (7) Wilma Fernández-Soto, the MCS network administration vice president. (Docket No. 203 at pp. 2–4.) According to the United States, Benitez is familiar with SSA regulations, template analysis, and loss calculations. Id. at p. 2. The private health insurance representatives intend to proffer testimony regarding billing practices, medical provider contracts, Medicare regulations, and fraud detection. Id. at pp. 2–3.

Dr. Oms argues that because this evidence is expert testimony, the requirements set forth in Federal Rule of Evidence 702 ("Rule 702") are applicable. (Docket No. 214.) The United States maintains, however, that the proposed testimony is subject to the lay witness requirements in Rule 701. (Docket No. 217.) The Court agrees with the United States.

## II. Federal Rules of Evidence 701 and 702

Pursuant to Rule 701, lay opinion testimony is admissible if it is "(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or otherwise specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; United States v. Flores de Jesús, 569 F.3d 8, 20 (1st Cir. 2009). Rule 702 provides that an expert may testify concerning "scientific, technical, or other specialized knowledge" if doing so "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; see Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999) (holding that Daubert applies to technical and other specialized expert testimony as well as to scientific testimony).

The Federal Rules of Evidence prohibit lay witnesses from offering testimony regarding "topics that are beyond the understanding of an average juror." United States v. Williams, 827 F.3d 1134, 1156 (D.C. Cir. 2016). A lay witness may, however present testimony "[resulting] from a process of reasoning familiar in everyday life." Fed. R. Evid. 701 (Advisory Comm. Note); United States v. García, 413 F.3d 201, 215 (1st Cir. 2005). For instance, in United States v. Galatis, the First Circuit Court of Appeals affirmed the admission of lay opinion testimony regarding the witnesses' "understandings of certain Medicare terms such as 'skilled nursing services' and 'homebound' in describing

what they had done and why." 849 F.3d 455, 461 (1st Cir. 2017). This testimony constituted "perfectly permissible lay experiential expertise founded on personal knowledge and susceptible to cross-examination." Id. (citing United States v. Vega, 813 F. 386, 394 (1st Cir. 2016) (citation omitted).

The distinction between lay opinion and expert testimony is imprecise and contingent on the circumstances of each case. United States v. Valdivia, 680 F.3d 33, 50 (1st Cir. 2012) (noting that the "line between expert testimony under Rule 702 and lay opinion testimony in Rule 701 is, in practice, not an easy one to draw"); see, e.g., United States v. Prange, 771 F.3d 17, 26 (1st Cir. 2014) (holding that "testimony can be admitted as lay testimony from experienced officers, expert testimony, or both depending on the circumstances"). Ultimately, courts analyze "the essence of the proffered testimony" to distinguish lay from expert testimony. Gómez v. Rivera-Rodríguez, 344 F.3d 103, 113 (1st Cir. 2003).

**III. Discussion**

Dr. Oms purports that "Medicare and Social Security regulations, boilerplate analyses, general billing practices and contractual issues" are inadmissible. (Docket No. 214 at p. 1.) This criminal action concerns alleged Medicare fraud, however, requiring the United States to prove that Dr. Oms:

> (1) knowingly devised a scheme or artifice to defraud [Medicare] in connection with the delivery of or payment for [Medicare] benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud.

18 U.S.C. § 1347; United States v. White, 492 F.3d 380, 393 (6th Cir. 2007). The proffered testimony from Benítez and the private insurance representatives is based on the witnesses' perceptions and familiarity with the relevant regulations and billing practices.

The Eleventh Circuit Court of Appeals' decision in United States v. Gold is illustrative. 743 F.2d 800 (11th Cir. 1984). An optometrist falsified insurance claims by altering the date of service and "billing Medicare for more expensive lenses than he had actually provided a customer." Id. at 808. The United States elicited testimony from the president of a company that acquired the optometrist's medical practice. Id. at 811. After the acquisition, the president reviewed the pertinent medical records. Id. at p. 812. These records "astonished" the president, demonstrating that "glasses were charged to Medicare even though no prescription was obtained [and] had been billed for glasses that were never made or delivered to the customer." Id. Moreover, the president testified that the volume of sales was "excessive" based on "his own examination of the store's records . . . and his personal experience in the optical business." Id. at 817. Id.

Accordingly, the Eleventh Circuit Court of Appeals held that the president's testimony fell within the ambit of Rule 701.  Id.

Like the Rule 701 evidence in Gold, the United States seeks to elicit testimony from witnesses "based on applying familiar reasoning processes to their job experiences."  United States v. Vega, 813 F.3d 386, 395 (1st Cir. 2016); see United States v. Lemons, 792 F.3d 941, 948—49 (8th Cir. 2015) (holding that an administrative law judge and disability benefits hearing officer were "permitted by the rules of evidence to express an opinion" regarding "a fact in issue—namely, whether Lemons made a material false statement to the Administration"); United States v. Moran, 778 F.3d 942, 967 (11th Cir. 2015) (affirming admission of "lay opinion of various witnesses who testified as to the eligibility of patients to receive treatment").  Indeed, this Court has permitted an SSA claims representative to offer lay opinion testimony concerning disability insurance regulations, the application process, and SSA reporting requirements.  United States v. Domínguez, Case No. 15-045, Docket No. 128 at pp. 74—134 (D.P.R. Oct. 7, 2016) (Besosa, J.); see United States v. Santana-Ríos, Case No. 15-021, Docket No. 119 (D.P.R. Aug. 18, 2017) (noting that SSA program specialist Orland Benitez testified at trial in a medical fraud case) (Pérez-Giménez, J.).

Accordingly, Dr. Oms' motion to exclude lay opinion testimony is **DENIED**. (Docket No. 214.)

## IV. Conclusion

For the reasons set forth below, Dr. Oms' motion to exclude lay opinion testimony is **DENIED.** (Docket No. 214.) The witnesses may not, however, provide expert testimony without the proper qualifications pursuant to Rule 702 and in compliance with the requirements set forth in Federal Rule of Criminal Procedure 16(a)(1)(G).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 22, 2019.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE